LUNA INDUSTRIES, INC. (formerly Luna Electric Co.), Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Luna Industries, Inc. (formerly Luna Electric Co.) v. Commissioner
Docket No. 5526-79
United States Tax Court
T.C. Memo 1982-168; 1982 Tax Ct. Memo LEXIS 584; 43 T.C.M. (CCH) 963; T.C.M. (RIA) 82168; March 30, 1982. Harvey R. Zeller, for the petitioner. Daniel K. O'Brien, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency of $ 86,133.67 in petitioner's *586 Federal income tax for its taxable year 1969. The sole issue presented here for our decision is whether petitioner may carry back to its 1969 taxable year, in which it filed a separate return, a loss generated during the 1972 taxable year in which a consolidated return was filed. The loss in issue was primarily attributable to a subsidiary corporation which filed no return for its 1969 taxable year. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner Luna Industries, Inc. (hereinafter referred to as Luna), is a corporation organized under the laws of the state of New York. At the time this action was commenced, petitioner had its principal offices in White Plains, New York. Luna was at all relevant times engaged in the electrical contracting business, primarily the installation of electrical work in new buildings. On November 18, 1969, Luna organized a wholly-owned subsidiary, Saturn Construction Co., Inc. (hereinafter referred to as Saturn). Saturn's business was as a general construction contractor. A return was prepared for Saturn for its short taxable *587 year ending December 31, 1969. The return showed a loss of $ 6,813.48, but it was never executed nor delivered to the Internal Revenue Service. The 1969 Saturn loss was carried forward, however, to the taxable year 1970 as a net operating loss deduction on the consolidated income tax returns of Luna Industries and its subsidiaries. Luna's 1969 Federal income tax return, which was properly executed and submitted, revealed taxable income of $ 179,393.25. Although Luna could thus have utilied Saturn's loss during 1969, Saturn did not file a Form 1122 authorizing Luna to make a consolidated return on its behalf for 1969. Preparation of these 1969 tax returns was handled by the accounting firm of Ernst and Ernst. The firm prepared and delivered to Mr. Luca Cappelli, Jr., president of both Luna and Saturn as well as the majority shareholder of Luna, two separate 1969 tax returns for Luna and Saturn. Following an examination of the returns, Mr. Cappelli questioned the wisdom of filing separate, as opposed to consolidated, returns. His accountants advised him not to file the return for Saturn, but informed him that he had to file the return for Luna and pay the tax. Mr. Cappelli *588 signed Luna's return, and gave it back to Ernst and Ernst for correction and filing. No amendments were ever made to change the return to a consolidated one, and the return received by the respondent was a separate return. Effective for the taxable year 1970 and all subsequent years for which its parent company must make a consolidated return for the affiliated group, Saturn filed its authorization and consent on Form 1122 to be included in the consolidated return filed by Luna. The consolidated returns filed by Luna for the taxable years 1970 and 1971 both revealed taxable income. However, the 1972 consolidated return showed a loss of $ 579,490 attributable to the various affiliates as follows: Luna Industries
($ 19,722.03)
Saturn Construction
($ 517,660.18)
Earth Equipment
($ 16,588.09)
Jupiter Supply
($ 25,520.04)
On or about September 12, 1973, Luna filed Form 1139, Corporation Application for Tentative Refund from Carryback of Net Operating Loss, together with Forms 870, Claims for ReFund for the years 1969, 1970, and 1971. Petitioner applied $ 179,393.25 of the total 1972 consolidated loss of $ 579,490 to Luna's taxable income for 1969 ($ 179,393.25), *589 thus resulting in a claim for the complete refund of the tax shown as due on Luna's 1969 Federal income tax return ($ 87,569.64), which claim was granted. In his statutory notice of deficiency, respondent allowed only $ 2,719.62 of the net operating loss carryback to 1969. As the entire tax originally paid with the return had been refunded, a deficiency was asserted based on taxable income as shown on the return less $ 2,719.62. Respondent now concedes that an additional carryback to 1969 of $ 3,044 should be allowed resulting from an unused investment credit attributable to Luna for the year 1972. OPINION Luna formed a wholly-owned subsidiary, Saturn, on November 18, 1969. Saturn prepared a Federal income tax return for its short taxable year ending December 31, 1969, revealing a loss of $ 6,813.48. That return was never filed. However, the loss was carried over to the 1970 consolidated return of Luna and its subsidiaries. Luna's 1969 return showed taxable income of $ 179,393.25. In spite of the fact that Luna could have utilized Saturn's 1969 loss, no election to file a consolidated return was made, and Luna filed a separate return. Beginning with 1970, Saturn joined *590 with Luna and its other subsidiaries in making a consolidated return. In 1972 the group realized a net loss, the bulk of which was attributable to Saturn. Respondent challenges petitioner's attempt to carry this net operating loss back to its 1969 taxable year. An affiliated group of corporations is given the election of making a single consolidated Federal income tax return in lieu of multiple separate returns. [1] The quid pro quo extracted from the taxpayer in exchange for this privilege is that all members of the affiliated group must consent to all of the consolidated return regulations prescribed under section 1502. Section 1501. [2]
*591 Pursuant to the grant of authority contained in section 1502, the respondent has promulgated a regulation to deal with the problem of carryovers and carrybacks of consolidated net operating losses. [3] In general, this regulation applies where a consolidated net operating loss (NOL) can be carried back to a separate return year of a corporation (or could have been so arried if such corporation were in existence) which was a member of the group in the year the loss arose. In such an event, the portion of the consolidated NOL attributable to the corporation must be apportioned to that corporation (see section 1.1502-79(a)(3), Income Tax Regs., for the rules governing apportionment) and is to be treated as an NOL carryover or carryback to the separate return year. Consequently, the portion so allocated may not be included in the consolidated NOL carryover or carryback to the equivalent consolidated return year. Section 1.1502-79(a)(1)(i), Income Tax Regs.[4]
*592 The term "separate return year" is defined by the regulations to mean "a taxable year of a corporation for which it files a separate return or for which it joins in the filing of a consolidated return by another group." Section 1.1502-1(e), Income Tax Regs.[5] Luna filed a separate return for its 1969 taxable year. Since the consolidated NOL can be carried back to this separate return year, and because Luna was a member of the group in the year the loss arose (1972), we find the limitation of section 1.1502-79(a)(1)(i) to be applicable. We therefore hold that Luna may utilize only the allocable portion of the consolidated NOL attributable to its own operations as a carryback to its 1969 separate return year. *593 The instant case bears a striking resemblance to Electronic Sensing Products, Inc. v. Commissioner,69 T.C. 276 (1977). There, a parent corporation and its wholly-owned subsidiary filed separate income tax returns for the year of the subsidiary's organization (1972). The following year the two filed a consolidated return reflecting a net operating loss. We held that the subsidiary's share of this loss could not be carried back to the prior year to be offset against the parent's income because the subsidiary had filed a separate return for 1972 and therefore that portion of the loss could be carried back only to the separate return year of the member incurring the loss--the subsidiary. We further held that the exception of section 1.1502-79(a)(2), Income Tax Regs., was not available inasmuch as the subsidiary was in existence during 1972. Petitioner attempts to distinguish Electronic Sensing Products on the ground that there a separate return was filed by the subsidiary whereas here Saturn filed no return at all. We cannot see how this distinction is of any assistance to the petitioner. The fact of the matter is that *594 Luna did file a separate return, and is therefore limited to its own share of the consolidated NOL. Additionally, it is difficult to see why a taxpayer who is required by law to file a return but intentionally fails to do so should be on a better footing than one who complies with the law by filing a return. [6]Electronic Sensing Products,supra.See also Jim Burch & Associates, Inc. v. Commissioner,76 T.C. 202 (1981). *595 Petitioner nevertheless argues that Luna and Saturn should be treated as if they had actually filed a consolidated return for 1969 since that was their "clear intent." We do not share petitioner's view that a clear intent to file a consolidated return was plainly manifested. But even if we did, simply deciding that it would be advantageous to file a consolidated return is not enough. There are strict guidelines to be followed when electing to file consolidated returns (see generally, section 1.1502-75, Income Tax Regs.), and even though expert guidance was available through Ernst and Ernst, these procedures were not followed. There is absolutely no indication on the face of Luna's 1969 return that it was also to serve as Saturn's return, especially since no financial or income data for Saturn was provided. On the other hand, there was included with the return an attached document consenting to the apportionment of the $ 25,000 investment credit limitation as determined under section 46(a)(2)(C) among members of the affiliated group (Luna and Saturn) in accordance with section 46(a)(5) and section 1.46-1(f)(2), Income Tax Regs. *596 Luna was allocated the entire amount. It seems perfectly obvious, therefore, that what was intended was what transpired--that Luna was to and did file its own separate return. Almost as an afterthought, petitioner for the first time on reply brief suggests that it may be deemed to have filed a consolidated return with Saturn under the provisions of section 1.1502-75, Income Tax Regs.[7] We find this position untenable. First, it is very late in the day for petitioner to be grasping--for the first time--at this straw. Secondly, to find the regulation applicable, we would have to conclude that the Commissioner had the matter before him and was guilty, at the minimum, of an abuse of discretion. Finally, the regulation by its terms does not appear applicable to the circumstances before us. See Lion Associates, Inc. v. United States,515 F. Supp. 550, 552 (E.D. Penn. 1981). *597 There are benefits and burdens attending the filing of a consolidated return, and taxpayers are put to an election. Petitioner took no steps of any kind suggesting it desired to file a consolidated return with Saturn for 1969 until 1973--4 years after the year we focus on. There is nothing in this record to suggest that petitioner's desire to file a consolidated return with Saturn was more than a belated afterthought arising from the clarity of subsequent events. Decision will be entered under Rule 155.
Footnotes
1. "The basic principle of the consolidated return is that the group is taxed upon its consolidated taxable income, representing principally the results of its dealings with the outside world after the elimination of intercompany profit and loss. The tax is computed at the usual rates, except that only one surtax exemption is allowed regardless of the number of includible corporations. * * *" [Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 15.20, p. 15-51 (4th ed. 1979). Fn. ref. omitted.] ↩
2. All section references are to the Internal Revenue Code of 1954, as amended, in effect for the taxable years here in issue, unless otherwise indicated. Sec. 1501 provides in relevant part: SEC. 1501. PRIVILEGE TO FILE CONSOLIDATED RETURNS. An affiliated group of corporations shall, subject to the provisions of this chapter, have the privilege of making a consolidated return with respect to the income tax imposed by chapter 1 for the taxable year in lieu of separate returns. The making of a consolidated return shall be upon the condition that all corporations which at any time during the taxable year have been members of the affiliated group consent to all the consolidated return regulations prescribed under section 1502↩ prior to the last day prescribed by law for the filing of such return. The making of a consolidated return shall be considered as such consent. * * *
3. Sec. 1502 provides: SEC. 1502. REGULATIONS. The Secretary or his delegate shall prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability. ↩
4. Sec. 1.1502-79(a)(1)(i), Income Tax Regs., provides: SEC. 1.1502-79. Separate return years.--(a) Carryover and carryback of consolidated net operating losses to separate return years.-- In general. (i) If a consolidated net operating loss can be carried under the principles of section 172(b) and paragraph (b) of sec. 1.1502-21 to a separate return year of a corporation (or could have been so carried if such corporation were in existence) which was a member in the year in which such loss arose, then the portion of such consolidated net operating loss attributable to such corporation (as determined under subparagraph (3) of this paragraph) shall be apportioned to such corporation (and any successor to such corporation in a transaction to which section 381(a) applies) and shall be a net operating loss carryover or carryback to such separate return year; accordingly, such portion shall not be included in the consolidated net operating loss carryovers or carrybacks to the equivalent consolidated return year. Thus, for example, if a member filed a separate return for the third year preceding a consolidated return year in which a consolidated net operating loss was sustained and if any portion of such loss is apportioned to such member for such separate return year, such portion may not be carried back by the group to its third year preceding such consolidated return year. An exception contained in sec. 1.1502-79(a)(2), Income Tax Regs., provides that there shall be no apportionment to a prior separate return year for which such member was not in existence provided such member was a member of the group immediately after its organization. This exception has no applicability to the present case as Saturn was concededly in existence for at least part of the 1969 taxable year. Electronic Sensing Products, Inc. v. Commissioner,69 T.C. 276↩ (1977).
5. Sec. 1.1502-1, Income Tax Regs., defines the terminology necessary to cope with these extremely intricate rules. Other definitions relevant to this case include: SEC 1.1502-1 DEFINITIONS. (a) Group. The term "group" means an affiliated group of corporations as defined in section 1504. See sec. 1.1502-75(d) as to when a group remains in existence. (b) Member. The term "member" means a corporation (including the common parent) which is included within such group. (c) Subsidiary. The term "subsidiary" means a corporation other than the common parent which is a member of such group. (d) Consolidated return year.↩ The term "consolidated return year" means a taxable year for which a consolidated return is filed or required to be filed by such group.
6. Every corporation subject to taxation under subtitle A is required to make an income tax return. Sec. 6012(a)(2). The regulations elaborate on this requirement: SEC. 1.6012-2. Corporations required to make returns of income.--(a) In general--(1) Requirement of return. Except as provided in paragraphs (e) and (g)(1) of this section with respect to charitable and other organizations having unrelated business income and to certain foreign corporations, respectively, every corporation, as defined in section 7701(a)(3), subject to taxation under subtitle A of the Code shall make a return of income regardless of whether it has taxable income or regardless of the amount of its gross income. (2) Existence of corporation. A corporation in existence during any portion of a taxable year is required to make a return. * * * Sec. 6072(b) further requires that returns of corporations under section 6012 made on the basis of the calendar shall be filed on or before the 15th day of March following the close of the calendar year. Saturn had no gross income for 1969 and showed $ 6,813.48 in deductions resulting in no taxable income. Nevertheless, under the regulations it would appear that Saturn should have filed a 1969 Federal income tax return.↩
7. Sec. 1.1502-75(b), Income Tax Regs., provides: (b) How consent for first consolidated year exercised--(1) General rule. The consent of a corporation referred to in paragraph (a)(1) of this section shall be made by such corporation joining in the making of the consolidated return for such year. A corporation shall be deemed to have joined in the making of such return for such year if it files a Form 1122 in the manner specified in paragraph (h)(2) of this section. (2) Consent under facts and circumstances. If a member of the group fails to file Form 1122, the Commissioner may under the facts and circumstances determine that such member has joined in the making of a consolidated return by such group. The following circumstances, among others, will be taken into account in making this determination: (i) Whether or not the income and deductions of the member were included in the consolidated return; (ii) Whether or not a separate return was filed by the member for that taxable year; and (iii) Whether or not the member was included in the affiliations schedule, Form 851. If the Commissioner determines that the member has joined in the making of the consolidated return, such member shall be treated as if it had filed a Form 1122 for such year for purposes of paragraph (h)(2) of this section. (3) Failure to consent due to mistake.↩ If any member has failed to join in the making of a consolidated return under either subparagraph (1) or (2) of this paragraph, then the tax liability of each member of the group shall be determined on the basis of separate returns unless the common parent corporation establishes to the satisfaction of the Commissioner that the failure of such member to join in the making of the consolidated return was due to a mistake of law or fact, or to inadvertence. In such case, such member shall be treated as if it had filed a Form 1122 for such year for purposes of paragraph (h)(2) of this section, and thus joined in the making of the consolidated return for such year.