WEGMAN'S PROPERTIES, INC., AND SUBSIDIARIES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6655–79.     Filed May 5, 1982.

*Paul S. Speranza, Jr.*, for the petitioners.
*Kenneth Bersani*, for the respondent.

### OPINION

TANNENWALD, *Chief Judge*: Respondent determined deficiencies in petitioners' Federal income tax of $25,883.47 for the taxable year ended June 24, 1972, and $24,023.10 for the taxable year ended June 30, 1973. The sole issue for our determination is whether, for purposes of computing petitioners' minimum tax liability, tax carryovers generated by one corporation in preaffiliation years[1] may be used to offset items of tax preference generated by a second corporation in consolidated return years.

This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts is incorporated by this reference.

The petitioners in this case are three corporations with their principal places of business in Rochester, N.Y.—Wegman's Properties, Inc. (Properties), Wegman's Enterprises, Inc. (Enterprises), and Wegman's Markets, Inc. (Markets). Properties was created during 1972 when the shareholders of Enterprises and Markets contributed all of their stock in those corporations to Properties in exchange for the stock of Properties.

---

[1] See sec. 1504(a) of the Internal Revenue Code of 1954, defining an affiliated group as follows:

(a) DEFINITION OF "AFFILIATED GROUP".—As used in this chapter, the term "affiliated group" means one or more chains of includible corporations connected through stock ownership with a common parent corporation which is an includible corporation if—

(1) Stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of each of the includible corporations (except the common parent corporation) is owned directly by one or more of the other includible corporations;.and

(2) The common parent corporation owns directly stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of at least one of the other includible corporations.

Thus, during 1972 and 1973, Enterprises and Markets were wholly owned subsidiaries of Properties.

For 1970 and 1971, Markets and Enterprises each filed separate Federal corporation income tax returns. In 1970 and 1971, Markets had $0 and $24,000 of tax preference items and generated tax carryovers of $108,571.50 and $558,583.86. In 1970 and 1971, Enterprises paid minimum tax of $46,762 and $23,263 and generated no tax carryovers.

Properties, Markets, and Enterprises properly elected to file consolidated returns for 1972 and 1973. For 1972, petitioners reported tax preference items for purposes of the minimum tax of $462,514.67. It appears that these tax preference items were generated by Enterprises. For 1973, Enterprises had tax preference items of $378,699, and Markets had tax preference items of $61,609. Petitioners' attempt to offset Markets' tax carryovers from 1970 and 1971 against tax preference items generated by Enterprises in 1972 and 1973 has been disallowed by respondent.[2]

Section 56(a)[3] imposes a minimum tax on tax preference

---

[2]See note 6, at p. 789 *infra*.

[3]Unless otherwise indicated, all further section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

Secs. 56 through 58 have been amended substantially since the years in issue. For taxable years beginning after 1975, the provision permitting tax carryovers has been repealed (except for tax attributable to income from timber). See sec. 301(b)(2) and (g), Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1550, 1553–1554, as amended by Pub. L. 94–568, 90 Stat. 2697–2698 (1976).

During the years in issue, sec. 56 provided in relevant part:

SEC. 56(a). IN GENERAL.—In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every person, a tax equal to 10 percent of the amount (if any) by which—

    (1) the sum of the items of tax preference in excess of $30,000, is greater than

    (2) the sum of—

        (A) the taxes imposed by this chapter for the taxable year (computed without regard to this part and without regard to the taxes imposed by sections 531 and 541) reduced by [certain credits not at issue here] * * * and

    *       *       *       *       *       *       *

    (B) the tax carry overs to the taxable year.

    *       *       *       *       *       *       *

(c) TAX CARRY OVERS.—If for any taxable year—

    (1) the taxes imposed by this chapter (computed without regard to this part and without regard to the taxes imposed by sections 531 and 541) reduced by the sum of [certain credits]—

    *       *       *       *       *       *       *

    (E) * * * exceed

items as defined in section 57. The tax is calculated by subtracting, from the items of tax preference, a $30,000 exclusion, the regular income tax paid for that year (adjusted to disregard certain credits), and any tax carryovers. The difference, the minimum tax base, is then multiplied by 10 percent to arrive at the minimum tax liability. Tax carryovers result when the regular income tax paid in a given year (adjusted for certain credits) exceeds the amount necessary to reduce the minimum tax base to zero. See sec. 56(c).[4]

On March 19, 1970, the Internal Revenue Service issued Technical Information Release 1032, stating that it would issue regulations reflecting the effect of the minimum tax on consolidated returns.[5] Those regulations have neither been issued nor proposed. Petitioners' position is that, in the absence of a specific provision under the consolidated return regulations, Markets' tax carryovers generated in preaffiliation years may be applied on petitioners' consolidated returns to offset Enterprises' items of tax preference. Respondent contends that, in the absence of an express regulation permitting such carryover of tax attributes, a proper interpretation of statutory provisions and court decisions mandates that the affiliated group not be permitted to use Markets' carryovers against Enterprises' preference items. We hold for respondent.

We emphasize that the issue here is a narrow one. Respondent apparently has allowed petitioners, in consolidated

---

(2) the sum of the items of tax preference in excess of $30,000,
then the excess of the taxes described in paragraph (1) over the sum described in paragraph (2) shall be a tax carry over to each of the 7 taxable years following such year. The entire amount of the excess for a taxable year shall be carried to the first of such 7 taxable years, and then to each of the other such taxable years to the extent that such excess is not used to reduce the amount subject to tax under subsection (a) for a prior taxable year to which [such] excess may be carried.

[4]For example, if, in a given year, tax preference items total $40,000 and the regular income tax imposed that year is $60,000, a tax carryover of $50,000 is generated ($40,000 preference items – $30,000 exclusion – $60,000 tax paid).

[5]Technical Information Release 1032 reads in relevant part as follows:

"The Internal Revenue Service today announced that amendments will be made to the regulations to reflect the effect on consolidated returns and partnerships of the addition by the Tax Reform Act of 1969 of the minimum tax for tax preferences.

"The amendment relating to consolidated returns will make clear that the election by affiliated groups of corporations to file a consolidated Federal income tax return is effective with respect to the computation of the minimum tax as well as the regular income tax."

We reject petitioners' suggestion that this Technical Information Release is somehow dispositive of the issue before us.

return years, to offset their combined regular income tax liability against their combined preference items.[6] We need only decide whether Markets' tax carryovers, generated in preaffiliation years, may be offset against Enterprises' preference items generated in affiliated years.

Any corporation seeking to utilize as a deduction tax attributes generated in past years by another corporation can do so only upon the authority of a specific statutory or regulatory provision. See *Woolford Realty Co. v. Rose*, 286 U.S. 319, 326 (1932); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934); *Wolter Construction Co. v. Commissioner*, 68 T.C. 39, 45 (1977), affd. 634 F.2d 1029 (6th Cir. 1980).

As previously indicated, the Secretary has not promulgated any consolidated return regulations authorizing the result petitioners are seeking. Nor does section 56 permit Enterprises to utilize Markets' 1970 and 1971 tax carryovers. Section 56 imposes a minimum tax on each "person" and provides for the computation of that tax. "Each corporation is a separate taxpayer whether it stands alone or is in an affiliated group and files a consolidated return. *National Carbide Corp. v. Commissioner*, 336 U.S. 422 (1949); *Interstate Transit Lines v. Commissioner*, 319 U.S. 590 (1943); *Woolford Realty Co. v. Rose*, 286 U.S. 319 (1932)." *Electronic Sensing Products, Inc. v. Commissioner*, 69 T.C. 276, 281 (1977). See also *Trinco Industries, Inc. v. Commissioner*, 22 T.C. 959, 962 (1954).[7] We see nothing in section 56 authorizing one taxpayer to use tax carryovers of another taxpayer.

In *Woolford Realty Co. v. Rose, supra,* the Supreme Court was faced with a similar issue: whether, in the absence of specific regulatory or statutory provisions, the net operating loss of corporation A, incurred in preaffiliation years, could, by the filing of a consolidated return, be offset against the net income generated by corporation B in an affiliated year. The

---

[6]Respondent also has permitted the use of Markets' carryover to offset Markets' tax preference items.

[7]See sec. 7701(a) defining "person" and "taxpayer" as follows:

(1) PERSON.—The term "person" shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation.

     \*        \*        \*        \*        \*        \*        \*

(14) TAXPAYER.—The term "taxpayer" means any person subject to any internal revenue tax.

Court, noting that the statute permitted "the taxpayer" to carry over the loss to future taxable years, decided that the affiliated group could not take advantage of A's carryover generated in preaffiliation years. "The fact is not to be ignored that each of two or more corporations joining * * * in a consolidated return is none the less a taxpayer. * * * A corporation does not cease to be such a [taxpayer] by affiliating with another." 286 U.S. at 328. We think the Supreme Court's holding and reasoning in *Woolford Realty Co. v. Rose, supra,* is applicable here to disallow Enterprises the use of Markets' 1970 and 1971 tax carryovers. Petitioners seek to distinguish *Woolford Realty* on the basis that the corporations involved therein had not been previously affiliated, whereas, in the case at bar, Enterprises and Markets had been brother-sister corporations, i.e., with common ownership, during the preconsolidated return years. Leaving aside for the moment whether the record contains sufficient evidence to support the assertion of the claimed common ownership, we are satisfied that such a fact is not a basis for distinguishing *Woolford Realty.* Cf. *Wolter Construction Co. v. Commissioner, supra.*

Petitioners' reliance on *Henry C. Beck Builders, Inc. v. Commissioner,* 41 T.C. 616 (1964), is misplaced. Contrary to petitioners' assertions, *Beck Builders* does not hold that, in the absence of consolidated return regulations governing a particular point, a taxpayer is entitled on a consolidated return to take whatever position it desires. Rather, *Beck Builders* stated that, in the absence of consolidated return regulations, the Court will look to other law, and held that "Other law does not permit inclusion in 1957 income of an item accrued in 1953 merely because the item was not taxed in 1953." 41 T.C. at 621. In the instant case, "other law" does not permit the deduction petitioners are seeking.

The parties have discussed at length the applicability of sections 381 and 382 and *Libson Shops, Inc. v. Koehler,* 353 U.S. 382 (1957). Those sections and that case involve the question of the availability of carryovers in the reorganization arena and in situations involving changes in the ownership of, and the business being carried on by, a corporation. We fail to see how they have any significance in determining the consolidated return issue before us.

On brief, petitioners state that they are entitled to take

advantage of allocating the $30,000 minimum tax exemption pursuant to section 58(b)[8] and petitioners' "Tax Allocation Agreement" dated November 19, 1979. Petitioners' "Tax Allocation Agreement" was attached as Exhibit "C" to their brief. The agreement is not part of, nor even mentioned in, the parties' stipulation and therefore is not part of the record. Petitioners may not, at this late date, raise what is essentially a new issue with respect to which respondent has not had the opportunity to deal.[9] *Malinowski v. Commissioner*, 71 T.C. 1120, 1128 (1979).

In sum, Markets' tax carryovers from 1970 and 1971 may not be offset against tax preference items generated in consolidated return years by Enterprises.

*Decision will be entered for the respondent.*

---

[8]Sec. 58(b) provides:

SEC. 58(b). MEMBERS OF CONTROLLED GROUPS.—In the case of a controlled group of corporations (as defined in section 1563(a)), the $30,000 amount specified in section 56 shall be divided equally among the component members of such group unless all component members consent (at such time and in such manner as the Secretary or his delegate prescribes by regulations) to an apportionment plan providing for an unequal allocation of such amount.

[9]We also note that the purported allocation agreement indicates a date 6 years after the last taxable year at issue herein and that there is no evidence that it was ever filed with respondent. Cf. sec. 1.1561–3(a), Income Tax Regs.