143 T.C. No. 17

UNITED STATES TAX COURT

APPLIED RESEARCH ASSOCIATES, INC. AND AFFILIATE, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21076-11.                          Filed October 9, 2014.

P, an affiliated group consisting of a qualified personal service
corporation A, the parent corporation, and a corporation that is not a
qualified personal service corporation, filed consolidated Federal
income tax returns for 2006 and 2007.  P reported consolidated
taxable income for 2006 and 2007, all of which was attributable to A.
On the basis that the affiliated group, as a single entity, was not a
qualified personal service corporation, P paid tax on the consolidated
taxable income of the affiliated group at graduated rates set forth in
I.R.C. sec. 11(b)(1).  On the basis that each affiliate's status as a
qualified personal service corporation is to be examined separately, R
determined that the consolidated taxable income of the affiliated
group was subject to the I.R.C. sec. 11(b)(2) flat 35% tax rate
applicable to qualified personal service corporations.

<u>Held</u>:  Graduated rates set forth in I.R.C. sec. 11(b)(1) should
be used to compute the amount of tax to be imposed on the
consolidated taxable income of an affiliated group consisting of a
qualified personal service corporation and an entity that is not a

qualified personal service corporation where the group, as a single entity, is not a personal service corporation.

Kenneth W. Heathington (an officer), for petitioner.

Nancy Wentz Hale and Beth A. Nunnink, for respondent.

OPINION

JACOBS, Judge:  The parties submitted this case fully stipulated pursuant to Rule 122.  Applied Research Associates, Inc. (Applied Research), is a corporation organized under the laws of Tennessee.  It provides professional engineering and consulting services and is a qualified personal service corporation as defined in section 448(d)(2).  During the years involved (2006 and 2007) Applied Research owned all the outstanding stock of Oak Crest Land & Cattle Co., Inc. (Oak Crest), a Texas corporation.  During the years involved Oak Crest owned and operated a 400-acre ranch in Texas which owned between 200 and 300 head of cattle.  Oak Crest is not a qualified personal service corporation.

Applied Research and Oak Crest constituted an affiliated group during the years involved.  The affiliated group timely filed consolidated 2006 and 2007 Federal income tax returns.  Applied Research generated taxable income, whereas

Oak Crest generated a loss, for each of the years involved.  The consolidated return reported taxable income for each of the years involved.

The issue for decision concerns the rate(s) of tax (graduated or a flat 35%) to be used to compute the amount of tax to be imposed by section 11(b) on the consolidated taxable income of an affiliated group consisting of a qualified personal service corporation and an entity that is not a qualified personal service corporation where the group, as a single entity, is not a qualified personal service corporation.  For the reasons set forth infra, we hold that graduated tax rates should be used.

All Rule references are to the Tax Court Rules of Practice and Procedure, and unless otherwise indicated all section references are to the Internal Revenue Code (Code) as in effect for the years involved.  All monetary amounts are rounded to the nearest dollar.  At the time the petition was filed, petitioner's principal place of business was in Tennessee, and the parties have stipulated that appeal in this case is to the Court of Appeals for the Sixth Circuit.

## Background

During the years involved Dr. Kenneth Heathington owned 50% of the common stock of Applied Research and his wife, Dr. Beth Heathington, held the

remaining 50%. Dr. Kenneth Heathington served as president of the corporation, and Dr. Beth Heathington served as its vice president.

Dr. Kenneth Heathington is an engineer licensed in Tennessee, Illinois, Indiana, and Mississippi. During the years involved Dr. Kenneth Heathington provided engineering services to Applied Research, including lectures and consulting services; chaired workshops; wrote reports, books and papers; and provided design work and construction supervision for structures that Applied Research owned. He spent 70% to 75% of his working time doing so, billing 1,143.75 hours in 2006 and 1,296.5 hours in 2007. Dr. Beth Heathington holds a doctorate in education and specializes in literacy. She has written numerous article and books in that field. During the years involved she provided administrative, financial accounting, and recordkeeping services to Applied Research, spending 45% to 50% of her working time doing so. Applied Research paid the Heathingtons, as well as 12 others, nonemployee compensation for their services.[1]

----

[1]The parties stipulated that, when looked at as a separate entity, Applied Research was a qualified personal service corporation. See infra p. 12. Although both Doctors Heathington received nonemployee compensation from Applied Research, we assume that as officers who received remuneration and who provided substantial services to the corporation, both were employees of Applied Research. See sec. 1.448-1T(e)(5)(ii), Temporary Income Tax Regs., 52 Fed. Reg.

(continued...)

Dr. Kenneth Heathington was president of Oak Crest and spent between 25% and 30% of his working time farming and ranching. He vaccinated and branded cattle, purchased and trained horses, hired and supervised contractors, and purchased equipment for Oak Crest. Dr. Beth Heathington served as Oak Crest's vice president and spent 50% to 55% of her working time on the job at the ranch. Oak Crest paid nonemployee compensation to four individuals; it paid no money to either Dr. Heathington.

Petitioner's 2006 consolidated Federal income tax return reported the following:[2]

| Line item | Applied Research | Oak Crest | Consolidated total reported on Form 1120 |
| --- | --- | --- | --- |
| Gross receipts | $555,652 | $52,030 | $607,682 |
| Cost of goods sold | -0- | 16,366 | 16,366 |
| Interest | 12,648 | 2,972 | 15,621 |
| Gross rents | 7,200 | 2,800 | 10,000 |
| Form 4797 net gain | -0- | 2,000 | 2,000 |
| Other income | -0- | 3 | 3 |
| Total income | 575,500 | 43,439 | 618,940 |
| Officers' comp. | 50,000 | -0- | 50,000 |
| Repairs/maintenance | 29,156 | 54,538 | 83,693 |

[1](...continued)
22770 (June 16, 1987); sec. 31.3121(d)-1(b), Employment Tax Regs.

[2]Dollar discrepancies for both the 2006 and 2007 tables result from rounding of the monetary amounts to the nearest dollar.

| Line item | Applied Research | Oak Crest | Consolidated total reported on Form 1120 |
|---|---|---|---|
| Rents | 1,000 | 2,796 | 3,796 |
| Taxes/licenses | 15,830 | 14,229 | 30,059 |
| Depreciation | 9,824 | 97,162 | 106,986 |
| Other deductions | 186,304 | 110,542 | 296,846 |
| Taxable income | 283,387 | -235,827 | 47,560 |

Petitioner's 2007 consolidated Federal income tax return reported the following:

| Line item | Applied Research | Oak Crest | Consolidated total reported on Form 1120 |
|---|---|---|---|
| Gross receipts | $632,841 | $75,918 | $708,760 |
| Cost of goods sold | -0- | 11,645 | 11,645 |
| Interest | 13,948 | 3,084 | 7,033 |
| Gross rents | 7,200 | -0- | 7,200 |
| Total income | 653,989 | 67,358 | 721,347 |
| Officers' comp. | 50,000 | -0- | 50,000 |
| Repairs/maintenance | 43,813 | 72,935 | 116,748 |
| Taxes/licenses | 12,020 | 14,229 | 26,249 |
| Depreciation | 78,598 | 71,377 | 149,975 |
| Other deductions | 204,154 | 93,442 | 297,596 |
| Taxable income | 265,404 | -184,625 | 80,779 |

As indicated by the above tables, for each of the years involved the consolidated taxable income reported on petitioner's consolidated Federal income tax return was attributable solely to Applied Research. The affiliated group paid tax on its consolidated taxable income at graduated rates set forth in section 11(b)(1).

On June 9, 2011, respondent issued petitioner a notice of deficiency with respect to 2006 and 2007. Respondent determined that the consolidated taxable

income reported on both consolidated returns is subject to the section 11(b)(2)

35% rate applicable to qualified personal service corporation income.

## Discussion

### I.    Statutory and Regulatory Framework

For 2006 and 2007 Applied Research and Oak Crest constituted an affiliated

group as defined by section 1504(a).  Applied Research was the common parent.

See sec. 1504(a).  The affiliated group filed consolidated Federal income tax

returns for both years involved as permitted by section 1501.

Section 1503(a) provides that in any case in which a consolidated return is

made, the tax shall be determined in accordance with the regulations promulgated

under section 1502.  Section 1502 provides that the Secretary shall prescribe such

regulations as he may deem necessary in order that the tax liability of the affiliated

group, and of each of its members, may be computed, assessed, and collected in

such manner as to clearly reflect its income tax liability and to prevent avoidance

of tax liability.  See also Norwest Corp. & Subs. v. Commissioner, 111 T.C. 105,

153 (1998); Woods Inv. Co. v. Commissioner, 85 T.C. 274, 277 (1985).

Section 1.1502-2, Income Tax Regs., provides that the computation of an

affiliated group's tax liability shall be determined by adding together the following

categories of tax:

(a) The tax imposed by section 11 on the consolidated taxable income for such year (see §1.1502-11 for the computation of consolidated taxable income);

(b) The tax imposed by section 541 on the consolidated undistributed personal holding company income;

(c) If paragraph (b) of this section does not apply, the aggregate of the taxes imposed by section 541 on the separate undistributed personal holding company income of the members of the group which are personal holding companies;

(d) If paragraph (b) of this section does not apply, the tax imposed by section 531 on the consolidated accumulated taxable income (see §1.1502-43);

(e) The tax imposed by section 594(a) in lieu of the taxes imposed by section 11 or 1201 on the taxable income of a life insurance department of the common parent of a group which is a mutual savings bank;

(f) The tax imposed by section 802(a) on consolidated life insurance company taxable income;

(g) The tax imposed by section 831(a) on the consolidated insurance company taxable income of the members which are subject to such tax;

(h) The tax imposed by section 1201, instead of the taxes computed under paragraphs (a) and (g) of this section, computed by reference to the net capital gain of the group (see §1.1502-22) (or, for consolidated return years to which §1.1502-22 does not apply, computed by reference to the excess of the consolidated net long-term capital gain over the consolidated net short-term capital loss (see §1.1502-41A for the determination of the consolidated net long-term capital gain and the consolidated net short-term capital loss));

(i) [Reserved]

(j) The tax imposed by section 1333 on war loss recoveries; and

by allowing as a credit against such taxes the investment credit under section 38 (see §1.1502-3) and the foreign tax credit under section 33 (see §1.1502-4).  For purposes of this section, the surtax exemption of the group for a consolidated return year is $25,000, or if a lesser amount is allowed under section 1561, such lesser amount.  See §1.1561-2(a)(2).  For increase in tax due to the application of section 47, see §1.1502-3(f).  For amount of tax surcharge, see section 51 and §1.1502-7 [Reg. §1.1502-2].

Consolidated taxable income principally represents the affiliated group's dealings with the outside world after the elimination of intercompany profit and loss.  See First Nat'l Bank in Little Rock v. Commissioner, 83 T.C. 202, 209 (1984) (citing Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 15.20, at p. 15-51 (4th ed. 1979)).  Sec. 1.1502-11, Income Tax Regs., provides that consolidated taxable income is computed by first taking into account the separate taxable income of each member of the group.  Each member's separate taxable income is calculated as if the member were a separate corporation and then certain modifications are made for any intercompany transactions and other items.  First Nat'l Bank in Little Rock v. Commissioner, 83 T.C. at 207-208; see sec. 1.1502-12, Income Tax Regs.

Once the affiliated group calculates its consolidated taxable income, section 1.1502-2(a), Income Tax Regs., directs the affiliated group to apply "[t]he tax imposed by section 11" on that consolidated taxable income. Section 11(a) imposes a tax on the taxable income of every corporation. Section 11(b)(1) provides for graduated rates of tax based on the corporation's taxable income. Section 11(b)(2) imposes a flat 35% tax on the taxable income of a qualified personal service corporation, as defined in section 448(d)(2).[3]

---

[3]Sec. 448 governs limitations on the use of the cash method of accounting. Sec. 448(a) provides that generally (1) C corporations, (2) partnerships which have a C corporation as a partner, and (3) tax shelters may not compute their taxable income under the cash receipts and disbursements method of accounting. Pursuant to sec. 448(b)(2), qualified personal service corporations are excepted from this general rule.

Sec. 448(d)(2) provides that a corporation is a qualified personal service corporation if (A) substantially all of its activities involve the performance of services in the fields of health, law, engineering, architecture, accounting, actuarial science, performing arts, or consulting (the function test), and (B) substantially all of the stock of the corporation, by value, is held directly, or indirectly through one or more partnerships, S corporations, or qualified personal service corporations not described in sec. 448(a)(2) or (3), by (i) employees performing services for the corporation in connection with the activities involving one of the aforementioned enumerated fields (the ownership test); (ii) retired employees who had performed such services for the corporation; (iii) the estate of any individual described in the two previous clauses; or (iv) any other person who acquired the stock by reason of the death of any of the aforementioned individuals, but only for the two-year period beginning on the date of the death of that individual.

Although for purposes of the imposition of tax, section 11 makes a distinction for entities that are qualified personal service corporations and those that are not, section 1.1502-2(a), Income Tax Regs., does not make such a distinction. Section 1.1502-2, Income Tax Regs., first addressed computation of tax liability in 1966 in T.D. 6894, 1966-2 C.B. 362, 366. At that time, section 11(b) provided that all corporations were subject to graduated tax rates.[4] In 1987 the Revenue Act of 1987 (RA 1987), Pub. L. No. 100-203, sec. 10224(a), 101 Stat. at 1330-412, amended section 11(b) to prevent qualified personal service

_____

[4]Before the enactment of the Revenue Act of 1987, Pub. L. No. 100-203, sec. 10224(a), 101 Stat. at 1330-412, sec. 11(b) provided:

SEC. 11. TAX IMPOSED.

(b) Amount of Tax.--The amount of tax imposed by subsection (a) shall be the sum of--

(1) 15 percent of so much of the taxable income as does not exceed $50,000;

(2) 25 percent of so much of the taxable income as exceeds $50,000 but does not exceed $75,000;

(3) 34 percent of so much of the taxable income as exceeds $75,000;

In the case of a corporation with taxable income in excess of $100,000 for any taxable year, the amount of tax determined under the preceding sentence for such taxable year shall be increased by the lesser of (A) 5 percent of such excess, or (B) $11,750.

corporations from reaping the benefits of graduated corporate tax rates. However, section 1.1502-2(a), Income Tax Regs., was not updated to reflect the 1987 amendment to section 11(b). Thus, section 1.1502-2(a), Income Tax Regs., for the years involved, retained the rule that consolidated taxable income is a singular item and does not provide different tax rates for qualified personal service corporations.

II.   Contentions of the Parties

The parties have stipulated that Applied Research, if considered by itself, was a qualified personal service corporation for both years involved. Further, the parties agree that if examined as a separate entity, Oak Crest was not a qualified personal service corporation for the years involved.

The parties disagree as to the tax rate to be imposed on the consolidated taxable income of an affiliated group when a qualified personal service corporation and another type of corporation combine to form the affiliated group and file a consolidated income tax return. Respondent asserts that in that situation each member corporation is to be examined separately to determine whether it is a qualified personal service corporation. Respondent further asserts that if at least one member of the affiliated group is determined to be a qualified personal service corporation, the consolidated taxable income of the group is to be to be split or

broken up into separate baskets, one for the income of the qualified personal service corporation and another for the income of the other type of corporation. And, respondent maintains, after doing so, a flat 35% rate is to be applied to the qualified personal service corporation's income and graduated rates are to be applied to the income of the corporation that is not a qualified personal service corporation.

In contrast, petitioner asserts, in essence, that because the consolidated return regulations do not provide for the splitting of an affiliated group's consolidated taxable income after the affiliated group's consolidated taxable income has been calculated, the entire amount of consolidated taxable income of the affiliated group is taxed at graduated rates.

The parties agree that if the affiliated group's consolidated taxable income may not be split into two separate baskets, the entire amount of the consolidated taxable income of the affiliated group is taxed at graduated rates. On the other hand, the parties agree that if the affiliated group's consolidated taxable income can be split into separate baskets, then inasmuch as all of the consolidated taxable income of the affiliated group is attributable to the operations of Applied

Research, a qualified personal service corporation, all of petitioner's taxable income is subject to the flat 35% rate.[5]

III.    Analysis

The consolidated return regulations are intended to balance what this Court described in Norwest Corp. & Subs. v. Commissioner, 111 T.C. at 152, as "two countervailing principles of the law relating to consolidated returns". The first of these principles is that "the purpose of the consolidated return provisions * * * is 'to require taxes to be levied according to the true net income and invested capital resulting from and employed in a single business enterprise, even though it was conducted by means of more than one corporation.'" First Nat'l Bank in Little Rock v. Commissioner, 83 T.C. at 209 (quoting Handy & Hartman v. Burnet, 284 U.S. 136, 140 (1931)). The contrasting second principle is that "'[e]ach

_____

[5]In his brief respondent notes that sec. 1.1502-2(e), Income Tax Regs., imposes a tax on a life insurance department's income without netting it against any losses of the consolidated group. Respondent asserts that this section grants him authority to impose the qualified personal service corporation's tax rate on the entire amount of income attributable to the qualified personal service corporation member without taking into consideration losses suffered by other members of the affiliated group. However, respondent states he took a "more conservative approach in this case to allow the members to net their income before applying the qualified personal service corporation tax rate". Because of respondent's concession, we need not and do not consider netting losses against qualified personal service corporation income.

corporation is a separate taxpayer whether it stands alone or is in an affiliated group and files a consolidated return.'" Wegman's Props., Inc. v. Commissioner, 78 T.C. 786, 789 (1982) (quoting Elec. Sensing Prods., Inc. v. Commissioner, 69 T.C. 276, 281 (1977)); see also secs. 1.1502-21A(f), 1.1502-12, Income Tax Regs.

Calculating consolidated taxable income requires an affiliated group to combine its members' separate taxable incomes, as defined in section 1.1502-12, Income Tax Regs., into one unitary amount. See sec. 1.1502-11, Income Tax Regs. Section 11, on the other hand, provides different taxing regimes, one for qualified personal service corporations and another for corporations that are not qualified personal service corporations. Thus, the resolution of the issue in this case requires us to decide whether we should (1) treat each member of the affiliated group separately and break the affiliated group's consolidated taxable income into separate baskets: one for the income of the qualified personal service corporation and another for the other corporation or (2) treat the affiliated group as a single entity and not break up the affiliated group's consolidated taxable income into separate baskets.

Respondent asserts that where one member of an affiliated group is a qualified personal service corporation and another is not, the consolidated taxable income of the affiliated group must be broken up into two separate baskets.

Respondent argues that section 448 requires that the determination as to whether a corporation is a qualified personal service corporation is to be made at the entity level, not at the level of the affiliated group. Further, respondent posits that the Code provides for treating qualified personal service corporate members of an affiliated group differently from other members. We disagree.

Although section 448(d)(4) provides special rules by which members of an affiliated group may determine their status as a qualified personal service corporation in electing whether to use the cash method of accounting, it provides no illumination as to the rate of tax to be applied to the consolidated taxable income of the entire group. Nor does section 448(d)(4) provide support for the proposition that the consolidated taxable income of an affiliated group is to be broken up into separate baskets.

Respondent maintains that because Applied Research is a qualified personal service corporation, when considered alone, it holds a "special status". Respondent asserts that when a member of an affiliated group has a "special status", the tax applicable to that member is calculated and added to the non-special-status members' tax under section 11. This, respondent claims, is the regime provided by paragraphs (b) through (j) of section 1.1502-2, Income Tax Regs. To support this assertion, respondent cites section 1.1502-2(g), Income Tax

Regs., which adds the tax imposed by section 831(a) on consolidated insurance company taxable income to the tax liability of the affiliated group. Respondent posits that just as insurance company income is taxed separately from the affiliated group's consolidated taxable income, qualified personal service corporation income is to be taxed separately from the affiliated group's consolidated taxable income. We disagree.

Paragraphs (b) through (j) of section 1.1502-2, Income Tax Regs., enumerate taxes to be added to an affiliated group's tax liability. Qualified personal service corporate income is not one of the enumerated special types of income. Indeed, far from providing qualified personal service corporations with special status, section 1.1502-2(a), Income Tax Regs., includes the income of qualified personal service corporations in the affiliated group's consolidated taxable income.

Respondent next argues that Applied Research and Oak Crest are, in reality, two separate corporations that have been permitted to file a consolidated return. Respondent analogizes the facts in this case to the facts in Specialty Rests. Corp. v. Commissioner, T.C. Memo. 1992-221. In Specialty Rests. Corp., the taxpayer (a parent corporation) incurred startup costs for its subsidiary restaurants. On its tax return, the taxpayer deducted these preopening costs under section 162. We

rejected the taxpayer's position, finding that the subsidiaries were separate legal entities. We thus held that the expenses were preopening expenses of the subsidiaries and represented capital contributions by a parent corporation to its subsidiaries.

The facts of <u>Specialty Rests. Corp.</u> are distinguishable from those in the instant matter. In rejecting the taxpayer's position, we emphasized that the subsidiaries had not begun operations at the time the expenses were incurred and thus the subsidiaries' expenses were not properly deductible under section 162. In this case, Applied Research and Oak Crest, as members of an affiliated group filing a consolidated return, were operating companies, and respondent has conceded that Applied Research and Oak Crest are permitted to net their incomes and expenses.

Petitioner argues that the affiliated group must be examined as a single, unitary entity for purposes of determining the proper tax rate to be applied to the affiliated group's consolidated taxable income. Petitioner's primary argument is that there is no guidance in the Code, the regulations, or other authority regarding the method of establishing the proper rate or rates of tax on consolidated taxable income where one member, but not all members, of the affiliated group is a qualified personal service corporation. While petitioner is correct that there is no

guidance with respect to such a situation, acceptance of petitioner's position is fraught with danger. Section 11(b) was intended to deny the benefits of graduated corporate income tax rates to qualified personal service corporations. See RA 1987 sec. 10224(a); H.R. Rept. No. 100-391 (Part 2), at 1097 (1987). Although we can envision circumstances where this intent could be circumvented by petitioner's position, we are nevertheless compelled to find in favor of petitioner.

Our conclusion is bolstered by our holding in Woods Inv. Co. v. Commissioner, 85 T.C. 274 (1985). In that matter, the taxpayer filed a consolidated return for itself and its four wholly owned subsidiaries. The subsidiaries used accelerated depreciation as provided by section 1.1502-32, Income Tax Regs. However, when the taxpayer parent sold the subsidiaries, it determined its basis in the subsidiaries' stock using straight-line depreciation as provided by section 312(k). The Commissioner determined that the taxpayer's straight-line depreciation gave it a "double deduction" and reduced the taxpayer's basis in the subsidiaries' stock.

We rejected the Commissioner's position and sustained the taxpayer's basis adjustments. We noted that section 312(k) was enacted after section 1.1502-32, Income Tax Regs., was promulgated; that the Commissioner was aware of the interplay between the section 312(k) of the Code and section 1.1502-32, Income

Tax Regs.; and that the Commissioner had failed to amend his regulations to reflect his litigating position. Woods Inv. Co. v. Commissioner, 85 T.C. at 281. We stated:

> If respondent believes that his regulations and section 312(k) together cause petitioner to receive a "double deduction," then respondent should use his broad power to amend his regulations. See Henry C. Beck Builders, Inc. v. Commissioner, 41 T.C. 616, 628 (1964). Since respondent has not taken steps to amend his regulations, we believe his apparent reluctance to use his broad power in this area does not justify judicial interference in what it essentially a legislative and administrative matter. Henry C. Beck Builders, Inc. v. Commissioner, supra (Drennen, J., concurring at page 633).

Id. at 282; see also Gottesman & Co. v. Commissioner, 77 T.C. 1149, 1158 (1981) (wherein we refused to "fill in the gaps" in the regulations with respect to the imposition of accumulated earnings tax on corporations filing consolidated returns).

In computing the proper tax liability of an affiliated group, we begin with section 1.1502-2, Income Tax Regs. Section 1.1502-2(a), Income Tax Regs., does not distinguish between taxable income under section 11(b)(1) and (2), and we find no authority to permit the breakup of an affiliated group's consolidated taxable income into separate baskets. We look to the affiliated group as a whole, i.e., the entity which generated the consolidated taxable income, to determine the characterization of the consolidated taxable income. And in this regard, the

parties agree that, when viewed as a whole, Applied Research's affiliated group is not a qualified personal service corporation.

To conclude, we hold that in the situation involved herein, graduated rates set forth in section 11(b)(1) should be applied to the affiliated group's consolidated taxable income. In reaching our holding, we have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be either without merit, irrelevant, or moot.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.